UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| RETAILMENOT, INC., | § | |
| | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Mary Kay Inc. files this Original Complaint against Defendant RetailMeNot, Inc., and would respectfully show:

## PARTIES

1. Plaintiff Mary Kay Inc. ("Mary Kay") is a Delaware corporation, licensed to do business in the State of Texas. Mary Kay maintains its principal place of business at 16251 Dallas Parkway, Addison, Texas 75001.

2. Defendant RetailMeNot, Inc. ("RMN") is a Delaware corporation with a principal place of business at 301 Congress Avenue, Suite 700, Austin, Texas. RMN's registered agent is Louis J. Agnese III, 301 Congress Avenue, Suite 700, Austin, Texas 78701.

## JURISDICTION AND VENUE

3. This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051, *et seq*. Accordingly, original jurisdiction over this case is conferred pursuant to 15 U.S.C. §§ 1121, 1125 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

4. This Court has personal jurisdiction over RMN because its principal place of business is in the State of Texas.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District and because the property at issue, which includes Mary Kay's valuable intellectual property rights, is situated in this district.

## BACKGROUND

**A.   Mary Kay's Business Model**

6. Mary Kay is a global manufacturer and wholesale distributor of cosmetics, toiletries, skin care, and related products and services. The worldwide success and recognition of the Mary Kay brand is undeniable as the Company's products are now sold in over thirty-five (35) markets around the world. Founded in 1963, Mary Kay has become one of the best known and most successful direct sellers of skin care products and color cosmetics in the United States and worldwide. Moreover, its founder, Mary Kay Ash, has been widely recognized as one of the most influential businesswomen in history.

7. Mary Kay's success can be attributed to its carefully designed direct-sales business model. Through this business model, Mary Kay produces the highest quality products and sells them directly to independent contractors known as Independent Beauty Consultants ("IBCs"), who then sell the products direct to their customers, the ultimate consumers, through

direct sales channels, including at-home parties and personal websites ("PWS").  IBCs are not permitted to sell products through retail channels or establishments.  Mary Kay offers IBCs education and product knowledge that they can, in turn, share directly with their customers to provide the highest level of customer service and ensure product satisfaction.

8. Mary Kay uses the direct-sales method to market its products.  Mary Kay does not sell products directly to the consumer, including in stores or on its website.  Instead, Mary Kay sells its products at wholesale prices, and on a pre-paid basis, to the self-employed IBCs.  The IBCs then offer Mary Kay products directly to their end-user customers at retail prices, by way of at-home parties, their PWS or other in-person sales.  Consumers interested in purchasing products advertised or listed on the Mary Kay website must connect with an IBC to purchase the product.

9. An individual becomes an IBC when she/he submits an IBC Agreement, which is accepted by Mary Kay at its Addison, Texas Headquarters, and then purchases a demonstration kit containing product samples and general information for use in her/his business.  IBCs are independent contractors that own and operate their independent businesses.  IBCs make profits from the retail sales of Mary Kay products to their customers.  IBCs may also choose to recruit others to become IBCs and can earn commissions when the individuals recruited make wholesale purchases of products from Mary Kay to sell at retail to their customers. IBCs are not permitted to use the Mary Kay trademarks without the permission of Mary Kay.  Mary Kay does not publish or distribute Mary Kay coupons or discount offers to the general public or permit others to do so.

**B.     Mary Kay's Trademarks**

10.     Mary Kay adopted the trademark, MARY KAY® for cosmetics at least as early as 1963, and Mary Kay has continuously used its MARY KAY® marks in connection with its direct-sales business and the sale of its products since that time.  Mary Kay owns exclusive rights to the MARY KAY® trademark in the United States for use with cosmetics and related goods, as evidenced by U.S. trademark Registration Nos. 817516, 1070841, 1545983, and 1842599 and others which are valid and subsisting (the "MARY KAY Marks").  The first of these registrations has a filing and constructive first use date of 1964 for cosmetics and skin care products, and all of the registrations are incontestable in accordance with Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Mary Kay also owns numerous foreign registrations of the MARY KAY mark.

11.     As a result of Mary Kay's early adoption and long-established use, the MARY KAY Marks are widely recognized and relied upon by the public in Texas and throughout the United States to identify Mary Kay's products and its business model, and to distinguish Mary Kay's products and services from the products and services of others.  Moreover, Mary Kay has an extensive media campaign, and Mary Kay uses the MARY KAY Marks in various media formats, including on the Internet, to promote its products, its services, and its unique direct-sales business model.  As a result of the continuous usage and promotion of the MARY KAY Marks, Mary Kay has acquired, in addition to the rights established through registration, recognized common-law rights in the MARY KAY Marks.  Mary Kay has also developed valuable goodwill in the MARY KAY Marks and the quality of the products sold and services rendered using its trademarks.

**D.     RMN's Digital Marketplace**

12.     RMN purports to own and operate the "world's largest digital coupon marketplace," located at the web address www.retailmenot.com.  RMN's mission is to be the "number one place where consumers find the best offers, whether shopping online or at a store."  It purports to have created a "marketplace for retailers to drive sales by showcasing their offers to consumers."  In the year ending December 31, 2013, RMN listed "digital coupons" from over 70,000 retailers and brands, which according to RMN, generated more than 550 million total visits to its website.  RMN's online marketplace listed more than 600,000 digital coupons each month for the year 2013, and it purports to have contracts with more than 10,000 paid retailers.

13.     According to RMN, "digital coupons" or "digital offers" are coupons, coupon codes, and brand or category specific discounts made available online or through its mobile application that are used by consumers to make online or in-store purchases from retailers.  RMN purports to make available to its users hundreds of thousands of digital coupons from tens of thousands of retailers and brands across multiple product categories, including cosmetics and skin care products.  Consumers visiting RMN's marketplace search for and discover digital coupons based on retailer name, product, category, offer-type, popularity, success rate and other characteristics.

14.     RMN purports to "aggregate" these digital coupons from a variety of sources including from the retailers directly, from performance marketing networks, from outsourced providers, from its employees, and from RMN's user community.  According to RMN, only about one-third of the digital coupons in RMN's marketplace are user-generated; the remaining digital offers are created by RMN or from retailers directly, and are made available in RMN's

marketplace to drive consumers to RMN's website, purportedly to make RMN "the most comprehensive destination for digital offer content for its consumers."

E. **RMN's Fraudulent Use of Mary Kay's Trademarks**

15. As explained above, Mary Kay is not a retailer and does <u>not</u> sell products directly to consumers, including in stores or through its MaryKay.com website. Instead, consumers can only purchase Mary Kay products directly from IBCs. In addition, Mary Kay does not publish or distribute Mary Kay coupons or discount offers to the general public or permit others to do so. Mary Kay has communicated all of this information to RMN.

16. Despite the aforementioned facts, RMN places on retailmenot.com various digital offers and coupons concerning, referring, and relating to Mary Kay products and services, falsely representing that Mary Kay produces and distributes, or authorizes the publishing and dissemination of Mary Kay coupons, and that Mary Kay itself sells products to the consumer by way of retail sales on its website. In essence, RMN is running a fraudulent Mary Kay couponing scheme. Upon information and belief, RMN does this solely to drive consumers to its website so that it may charge higher advertising rates and other fees from its affiliated retailers and merchant partners. By listing "sales," "deals," and other coupon codes for famous companies like Mary Kay, RMN drives consumers to its website, even where, as here, Mary Kay has <u>no</u> relationship with RMN, has <u>not</u> offered any coupons or deal codes that RMN features on its website, and has notified RMN to cease these activities.

17. Specifically, RMN offers at least two types of digital offers related to Mary Kay on its website, both of which include unauthorized links to marykay.com: "Sales" and "Codes." These RMN digital offers are listed on a "Mary Kay" merchant page created by RMN without authorization, and listed under a heading entitled "Mary Kay Coupon Codes." A purple icon

purports to identify a "Mary Kay Sale" and a green or grey icon purports to identify a "Mary Kay" discount "Code."

18. The purported "sales" listed on the Mary Kay merchant page were developed, written, and created by RMN employees. RMN then posts these "sales," purportedly based on information contained on and drawn from the Mary Kay website, to the Mary Kay merchant page hosted on retailmenot.com. According to RMN, it advertises these "sales," without permission or authorization from Mary Kay, merely to increase the number of consumers visiting its website. Upon information and belief, RMN employees also generate "codes" featured on the Mary Kay merchant page. Whereas "sales" and some "codes" are manually created by RMN employees, some "codes" and other discounts may be user-submitted.

19. RMN is instrumental in – and responsible for – the creation of "user-submitted" content, including "codes" for Mary Kay products and services. As described in greater detail herein, RMN actively solicits and facilitates the development of user-submitted "codes." Indeed, RMN's website contains numerous links for users to submit coupons (*e.g.*, "submitting a coupon" and "click here to submit a coupon"). Likewise, the "frequently asked questions" section of the RMN website also contains answers to the question of "how do I submit a coupon to the site." In addition, RMN provides a link to submit a coupon directly on RMN's Mary Kay merchant page, prompting users to submit Mary Kay coupons directly beneath language stating, "submit a new coupon and help others save!"

20. Moreover, RMN requires its users to grant it an exclusive, perpetual license in all user-submitted content, effectively granting RMN an ownership interest in the user-submitted content. Specifically, paragraph 2.5 of RMN's terms of use state:

> By posting or contributing content to the Services, or by providing any feedback, suggestions, ideas, and other submissions to RetailMeNot, you are granting RetailMeNot a non-exclusive, royalty-free, perpetual, and worldwide license to use your content in connection with the operation of the Services, including, without limitation, (a) the license rights to copy, distribute, transmit, publicly display, publicly perform, reproduce, edit, translate and reformat your content, and/or to incorporate it into a collective work, and (b) the right to sublicense any or all of RetailMeNot's license rights to others. You further waive any and all moral rights in and to such content in favor of RetailMeNot. For greater certainty, this means that, among other things, RetailMeNot has the right to use any and all ideas you submit (including ideas about our products, services, publications or advertising campaigns) in any manner that we choose, without any notice or obligation to you whatsoever.

21. Instead of merely publishing third-party provided information, RMN assumes a pivotal and integral role in encouraging, directing, possessing, and contributing to the posting of this content. Indeed, RMN often refuses to remove user-submitted content, even at the request of the user. Instead, RMN simply "recasts" the previously submitted "sale" or "code" as an "expired" code and continues to list it on the website. RMN is therefore responsible, in whole or in part, for the creation and development of "user-submitted" "codes" and other information available on the Mary Kay merchant page and/or elsewhere on retailmenot.com.

22. Mary Kay does not provide "digital offers" or "digital coupons" for publication on RMN; nor does Mary Kay permit or authorize RMN to list deals, sales, or codes using or referring to the Mary Kay Marks. By listing these purported Mary Kay "sales" and "codes" on its website, RMN misleads consumers into believing that Mary Kay has a relationship with RMN, that Mary Kay products can be purchased directly from Mary Kay at a reduced price, and that the coupon "codes" are legitimate. In short, RMN's use of the Mary Kay Marks implies that Mary Kay has endorsed or approved of RMN's activities, which it has not and does not.

23. The specific uses of the Mary Kay Marks by RMN further increases the likelihood of confusion among consumers. For example, RMN's inclusion of a "Mary Kay"

merchant page, the "About Mary Kay" description, and language such as "Show more about Mary Kay, "Shop marykay.com," and "Coupons from related stores," lead consumers into falsely believing there is an approval, affiliation or partnership between Mary Kay and RMN. This false impression is bolstered by other representations on the RMN website. Indeed, the RMN website variously refers to merchants as "its associated merchants," as RMN "partners," and as "our merchants."

24. In addition, RMN consistently describes the digital offers displayed on its website as being *from* the merchant. *See* 8-12-14 RMN Press Release ("With 500,000 offers *from* more than 50,000 retailers, RetailMeNot shoppers enjoy saving on virtually everything they buy.") (emphasis added); *id*. ("About RetailMeNot, Inc. . . . The company enables consumers across the globe to find hundreds of thousands of digital offers *from* their favorite retailers and brands.") (emphasis added); *see also* Mary Kay digital offers (which, when clicked on, state: "Never miss a great deal *from* Mary Kay. Our Deal Alerts and email newsletter notify you about the best offers *from* Mary Kay, so you'll never miss a great deal.") (emphasis added).

25. This misleading and false impression is further bolstered by RMN's use of the term "Mary Kay" in its Google advertisements. Upon information and belief, RMN has purchased from Google various search terms using "Mary Kay" (and various of the Mary Kay Marks) so that retailmenot.com appears first on Google's search results (*i.e.*, retailmenot.com is the first identified website at the top of the search results page) when a user searches for "Mary Kay" in connection with, for instance, the term "coupon." Were a consumer to have run that search in October of 2014, for instance, he or she would have seen the following link at the top of the search results page: "Mary Kay Coupons – retailmenot.com," immediately followed by the

link marykay.retailmenot.com, itself followed by the text "Save Avg of $17 at Mary Kay.  Get Oct 2014 Coupons . . . ."

26. By using the term "Mary Kay" directly in the link and suggesting an average discount, RMN provides consumers with the false suggestion that it and Mary Kay are affiliated and/or that Mary Kay has sponsored RMN's website.



(**Image 1** – Google search results for "mary kay coupons")

27. Further, by representing that there is a "sale" on www.marykay.com, or that there is a "deal" available on marykay.com, RMN is misleading consumers into believing that products can be purchased from Mary Kay on www.marykay.com at a discounted price. Likewise, by linking coupons to www.marykay.com and representing the amount of an "average savings" both in the Google sponsored link and on RMN itself, RMN is misleading consumers into believing that these "sales," "deals," and coupons are legitimate and will be honored by Mary Kay at its website or by IBCs who sell Mary Kay products.  This deception is compounded

by the disclaimer found on the RMN website, which suggests that RMN "may" be affiliated with Mary Kay, or that Mary Kay has authorized RMN to sponsor these deal and coupon codes on its website, which it has not.

28. RMN's listing of these "sales," "deals," and "coupons" harms Mary Kay and its relationship with its customers (the IBCs). Mary Kay has received various complaints from IBCs and others, who have been pressured by customers to accept and/or honor the false or unauthorized "coupons" posted on RMN's website. In addition, RMN often resists, refuses or is slow to remove expired coupons and other codes or unauthorized offers, even when users ask RMN to remove them, likely because the number of coupons and other listings for Mary Kay and others on RMN's website increases the amount of traffic to the website, which in turn allows RMN to charge higher rates for its services. Indeed, RMN states on its website that it intentionally leaves even the expired coupons because "some coupons may work beyond the expiration date." By suggesting that Mary Kay sponsors, partners, or otherwise affiliates with RMN, RMN harms Mary Kay and the Mary Kay Marks.

29. Mary Kay informed RMN that its unauthorized use of the Mary Kay Marks and logo in connection with the listing of these incorrect, misleading, and infringing coupons, sales, and deals was unacceptable to Mary Kay and must cease. Mary Kay further informed RMN about Mary Kay's unique business model, its relationship with its IBCs, the fact that Mary Kay does not offer coupons, codes, or sales in light of its business model, and the fact that it makes no sales directly to consumers. RMN refused to remove the infringing material, notwithstanding Mary Kay's effort to resolve these disputes informally.

30. In sum, RMN's unauthorized activities and use of the Mary Kay Marks has confused or is likely to confuse consumers regarding its affiliation, connection, or association of

RMN with Mary Kay, as well as to the origin, sponsorship, or approval of RMN's goods, services, or commercial activities by Mary Kay. RMN's unauthorized activities and use of Mary Kay's trademarks also implies that Mary Kay has endorsed or approved its activities, which it has not, and further suggests there is a partnership between Mary Kay and RMN, all to the detriment of Mary Kay. As a result of the confusion that has been or is likely to be engendered by RMN's activities, the Mary Kay Marks and associated goodwill are therefore being irreparably harmed.

### COUNT I: Trademark Infringement (15 U.S.C. § 1114)

31. Mary Kay hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

32. Defendant's conduct constitutes trademark infringement under the LANHAM ACT, codified at 15 U.S.C. § 1114.

33. On information and belief, Defendant's actions have been willful, with full knowledge of Mary Kay's trademark rights, and with an intent to trade on Mary Kay's goodwill in such registered trademarks, thus making this an exceptional case under 15 U.S.C. § 1117(a).

34. As a result of Defendant's wrongful conduct, Mary Kay is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount to be proved at trial, including enhanced damages as allowed by law, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

### COUNT II: Unfair Competition (15 U.S.C. § 1125(a))

35. Mary Kay hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

36. By and through the acts and omissions described in more detail above, RMN has, without Mary Kay's consent or authorization, used in interstate commerce and to advertise and/or promote its services, a word, term, name, or symbol, or any combination thereof, including, without limitation, the Mary Kay Marks, which are likely to mislead, cause confusion, and/or cause mistake or deception regarding Mary Kay's services and/or commercial activities, and/or approval or sponsorship of the false advertisements.

37. RMN's acts and omissions described in this Complaint and in this Count constitute unfair competition, in violation of Section 43(a) of the LANHAM ACT, 15 U.S.C. § 1125(a).

38. Upon information and belief, the wrongful acts and/or omissions alleged in this Complaint and in this Count are willful.

39. Such wrongful acts and/or omissions by RMN has caused and, unless enjoined by this Court, will continue to cause serious and irreparable injury to Mary Kay for which Mary Kay has no adequate remedy at law. This includes, without limitation, loss of business, customer relations, competitive advantage, and/or goodwill. For the reasons described above, Mary Kay is likely to succeed on the merits of its underlying claims. Moreover, the potential injury to RMN (if any) is minimal, and does not outweigh the actual and/or potential injuries to Mary Kay if RMN is not enjoined. Therefore, Mary Kay is entitled to preliminary and permanent injunctive relief, as further described in the Prayer for Relief in this Complaint.

40. Such wrongful acts and/or omissions by RMN also have caused and will continue to cause actual damages to Mary Kay. Therefore, Mary Kay is entitled to a monetary judgment against RMN in an amount to be determined by a jury.

41. Mary Kay is further entitled to recover from RMN the gains, profits, and advantages that RMN have obtained as a result of such wrongful acts and omissions.

42. Mary Kay is further entitled to recover the costs of this action. Mary Kay is informed and believes, and on that basis alleges, that RMN's conduct was undertaken willfully and with the intention of causing mistake, confusion or deception, and/or that this is an exceptional case entitling Mary Kay to recover additional damages and reasonable attorneys' fees.

### COUNT III: False Advertising (15 U.S.C. § 1125(a))

43. Mary Kay hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

44. By and through the acts and omissions described in more detail above, RMN has, without Mary Kay's consent or authorization, used in interstate commerce, in commercial advertising or promotion, a false or misleading description of fact, or false or misleading representation of fact, which misrepresents the nature, characteristics, qualities, or geographic origin of RMN and/or Mary Kay's goods, services, or commercial activities.

45. As shown above, and as a result of such acts and omissions, Mark Kay has suffered an injury to its commercial interest and its business reputation proximately caused by a defendant's representations.

46. RMN's acts and omissions described in this Complaint and in this Count constitute false advertising, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47. Upon information and belief, the wrongful acts and/or omissions alleged in this Complaint and in this Count are willful.

48. Such wrongful acts and/or omissions by RMN has caused and, unless enjoined by this Court, will continue to cause serious and irreparable injury to Mary Kay for which Mary Kay has no adequate remedy at law. This includes, without limitation, loss of business, customer relations, competitive advantage, and/or goodwill. For the reasons described above, Mary Kay is likely to succeed on the merits of its underlying claims. Moreover, the potential injury to RMN (if any) is minimal, and does not outweigh the actual and/or potential injuries to Mary Kay if RMN is not enjoined. Therefore, Mary Kay is entitled to preliminary and permanent injunctive relief, as further described in the Prayer for Relief in this Complaint.

49. Such wrongful acts and/or omissions by RMN has caused and will continue to cause actual damages to Mary Kay. Therefore, Mary Kay is entitled to a monetary judgment against RMN in an amount to be determined by a jury.

50. Mary Kay is further entitled to recover from RMN the gains, profits, and advantages that RMN has obtained as a result of such wrongful acts and omissions.

51. Mary Kay is further entitled to recover the costs of this action. Mary Kay is informed and believes, and on that basis alleges, that RMN's conduct was undertaken willfully and with the intention of causing mistake, confusion or deception, and/or that this is an exceptional case entitling Mary Kay to recover additional damages and reasonable attorneys' fees.

### **COUNT IV: Trademark Dilution (15 U.S.C. § 1125(c))**

52. Mary Kay hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

53. Based on Mary Kay's use, publishing, advertising, marketing, and general popularity of the Mary Kay Marks, they have acquired fame such that the public associates the marks with Mary Kay, its products, and its commercial services.

54. The Mary Kay Marks are famous and distinctive within the meaning of Section 43(c) of the LANHAM ACT, 15 U.S.C. § 1125(c).

55. The Mary Kay Marks were famous years before RMN misappropriated them for use in commerce in connection with RMN's commercial services.

56. Mary Kay has not authorized or licensed RMNs' use of any of the Mary Kay Marks or marks similar to the Mary Kay Marks.

57. Upon information and belief, RMN's adoption and commercial use of the Mary Kay Marks was undertaken knowingly and willfully.

58. By reason of the foregoing, Defendants have engaged in and are continuing to engage in acts which dilute and are likely to dilute the distinctive quality of Plaintiff's trademarks in violation of Section 43(c) of the LANHAM ACT, 15 U.S.C. § 1125(c).

59. Mary Kay has been damaged by RMN's acts in an amount to be determined at trial, and if RMN's conduct is allowed to continue, Plaintiff's famous trademarks, as well as its goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated in money damages.

60. Mary Kay is entitled to monetary damages and injunctive relief prohibiting RMN from using any of the Mary Kay Marks, and any other trade name, trademark, service mark, user name, or domain name that is likely to be confused with Plaintiff's mark or otherwise unfairly competing with Plaintiff.  Without preliminary and permanent injunctive relief, Plaintiff has no means by which to control the continuing injury to the reputation and goodwill associated with

its marks. Money damages may not adequately compensate Plaintiff if it suffers damage to its reputation and associated goodwill through RMN's use of the Mary Kay Marks.

### COUNT V: Unfair Competition (Texas Common Law)

61. Mary Kay hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

62. RMN's conduct constitutes unfair competition under Texas common law. As a result Defendant's wrongful conduct, Mary Kay is entitled to the injunctive remedies specified in the Prayer for Relief and damages in an amount to be proved at trial.

### COUNT VI: Injunctive Relief

63. Mary Kay hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

64. RMN has damaged Mary Kay, and is continuing to damage Mary Kay, by the willful and unlawful acts complained of herein. Unless RMN is restrained by this Court, it will cause irreparable injury to Mary Kay for which there is no adequate remedy at law.

### REQUEST FOR JURY TRIAL

65. Pursuant to Rule 38(b), FEDERAL RULES OF CIVIL PROCEDURE, Mary Kay demands a trial by jury.

### PRAYER

For the reasons stated above, Plaintiff Mary Kay Inc. prays for the following:

A. A preliminary and permanent injunction enjoining, restraining, and/or ordering RMN and its agents, servants, employees, affiliates, divisions, subsidiaries, and those in association, or working in concert with them

    a. from using the Mary Kay Marks, including without limitation MARY KAY, MK, and any other marks, names, slogans, symbols, devices, indicia and information of Mary Kay, and remove all use of the same from all websites, advertising, and promotional materials, the Internet, domain names, and the like;

    b. to immediately and permanently remove from the RMN website, and any affiliated website, all coupons, deals, or other postings for Mary Kay, including any that are linked or directed to MaryKay.com or that include any of the Mary Kay marks;

    c. to immediately and permanently refrain from accepting, publishing, and/or displaying any new coupons, deals, or other postings for Mary Kay, MaryKay.com, or that include any of the Mary Kay Marks;

B.    An award of damages sustained as a result of RMN's activities, trebled as allowed by law;

C.    An award of exemplary damages sustained as a result of RMN's activities;

D.    An accounting of RMN's revenue resulting from RMN's activities, and that its profits be paid over to Mary Kay, increased as the Court finds to be just under the circumstances of this case and that the unlawfully obtained Mary Kay products in RMN's possession, custody, or control be disposed of appropriately as the Court finds to be just under the circumstances of this case;

E.    An award of attorneys' fees and costs as allowed by law;

F.    An award of prejudgment and post-judgment interest on all sums awarded; and

G. For such other and further relief as the court may deem just, equitable and appropriate.

DATED: March 13, 2015

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
John T. Cox III
tcox@lynnllp.com
Texas Bar No. 24003722
Christopher J. Schwegmann
cschwegmann@lynnllp.com
Texas Bar No. 24031515
**LYNN TILLOTSON PINKER & COX, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800  Telephone
(214) 981-3839  Facsimile

**ATTORNEYS FOR PLAINTIFF
MARY KAY INC.**

PLAINTIFF'S ORIGINAL COMPLAINT                                                                 Page 19
4846-9825-4370